## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**DOYLE DETIVEAUX**                                                                  **PLAINTIFF**

**v.**                                                          **CAUSE NO. 1:14CV340-LG-RHW**

**PREMIER ENTERTAINMENT BILOXI**
**LLC, doing business as Hard Rock Hotel**
**& Casino Biloxi**                                                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING
### IN PART AND DENYING IN PART DEFENDANT'S
### <u>MOTION FOR SUMMARY JUDGMENT</u>

**BEFORE THE COURT** is the Motion for Summary Judgment [58] filed by

Premier Entertainment Biloxi LLC.  Premier argues that it is entitled to judgment

as a matter of law as to Doyle Detiveaux's claims that he was wrongfully arrested,

detained, and handcuffed by security guards at Premier's Hard Rock Casino.

Detiveaux has filed a response in opposition to the Motion, and Premier has filed a

reply.  After reviewing the submissions of the parties, the record in this matter, and

the applicable law, the Court finds that Premier is entitled to summary judgment

as to Detiveaux's claims of negligent hiring, assault and battery, false arrest, and

intentional infliction of emotional distress.  The motion is denied in all other

respects.

### FACTS

On September 7, 2013, Doyle Detiveaux, his step-son-in-law Jeremy Pinel,

and others played Progressive Three Card poker at the Hard Rock Casino.[1]  (Compl.

---

[1] The wives of these two men were also present at the casino, but they did not
participate in the card game.  (Compl. at 2, ECF No. 1).

at 2, ECF No. 1).  About forty minutes to an hour after they started playing, Detiveaux claims the dealer dealt him a straight flush – a five, six, and seven of hearts.  (Pl.'s Resp. Ex. A at 102-03, ECF No. 81).  Detiveaux claims he tipped the dealer two $25 chips for dealing the straight flush.  (*Id*.)  He also put a $25 chip on top of his cards.  (*Id*. at 103).  The dealer began to collect Pinel's cards, which had been discarded on the table, but realized that one of Pinel's cards was missing.  (*Id*.)  Pinel had thrown his cards on the table because he had a non-playable hand.  (*Id*. at 104).  Detiveaux eventually realized that Pinel had dropped a six of clubs on top of Detiveaux's cards.  (*Id*.)  Detiveaux removed the six of clubs and placed it on the table.  (*Id*.)  He then demanded payment, because he felt he had a winning hand.  (*Id*.)  The table was shut down due to the discrepancy over Pinel's cards.  (*Id*.)

After about forty to forty-five minutes of waiting, Detiveaux told Pinel and Thibodaux, "If they don't pay me, y'all gonna be bailing me out of jail, 'cause I'm fixing to [expletive] hit somebody if they don't pay me."  (*Id*. at 104-05).  Detiveaux said this statement loud enough for other players at the table to hear him, as well as the dealer.  (Def.'s Mot., Ex. A at 106, ECF No. 67).  Detiveaux also indicated that the dealer might be the person he would hit.  (*Id*.)  However, he testified at his deposition that he did not intend to strike any one at that point.  (*Id*.)

Soon afterwards, Hard Rock security guards walked up to the card table.  (Pl.'s Resp. at 102-03, ECF No. 81).  One of the guards pointed to Pinel and Detiveaux and told them to come with them.  (*Id*.)  Detiveaux said, "You pay me my

[expletive] money, [and] I will go with you." (*Id.*)  Detiveaux claims that the guard

said, "Grab him; if he refuses to come, drag him[.]" (*Id.*)[2]  As the security guards

approached, Detiveaux claims he threw his hand up and told them not to touch him.

(*Id.*)  He claims that one of the guards grabbed him, put his arms behind his back,

and dragged him through the casino. (*Id.*)  The security guards did not explain why

they were taking him away from the table. (*Id.*)  About halfway through the casino,

the guards released Detiveaux. (*Id.* at 124).  Detiveaux admits that he turned

around and pushed the guard that was behind him, because he thought he was

being kidnapped, and he was trying to defend himself. (*Id.*)  He also called one of

the guards an expletive. (*Id.* at 125).  The guards then placed him in handcuffs.

(*Id.*)

 In depositions, the guards have admitted that the handcuffs were not double-

locked, because Sam Forehand, the guard who placed the cuffs on Detiveaux, did

not have the key to the handcuffs. (Pl.'s Resp., Ex. F at 29, ECF No. 81-17); (Pl's

Resp., Ex. G at 58, ECF No. 81-18).  The guards have testified that double-locking

the handcuffs prevents the handcuffs from tightening. (Pl.'s Resp., Ex. F at 39, ECF

No. 81-17); (Pl's Resp., Ex. G at 58, ECF No. 81-18).  Surveillance video of the

casino reveals that Detiveaux's hands were handcuffed behind his back. (Def.'s

Mot., Ex. H, Disc 3, ECF No. 67-7).  The video also reveals that Detiveaux either

---

 [2] Portions of Detiveaux's account of the incident are disputed by Premier;
however while considering a motion for summary judgment, "[t]he evidence of the
non-movant is to be believed, and all justifiable inferences are to be drawn in his
favor."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

pushed or slapped Forehand – the first security guard that approached him. (*Id.* at Disc 2, Monitor 4); (*Id.* at Disc 4 Monitor 03). Forehand then reached his arms under Detiveaux's arms in order to restrain Detiveaux and move him to the interview room. (*Id.*) As they walked to the room, Detiveaux continued to struggle in an attempt to release himself from Forehand's custody. (*Id.*) Detiveaux stopped resisting once he was handcuffed. (*Id.*) Pinel willingly accompanied the security guards, and he was never handcuffed. (*Id.*)

Detiveaux and Pinel were taken to a locked interview room. (*Id.* at Disc 3). Based on the surveillance video, they arrived at this room at approximately 11:46 p.m. (*Id.*) When they reached the interview room, Forehand asked Detiveaux whether he would like for the handcuffs to be removed, and Detiveaux replied, "It's up to you, dude." (*Id.*) Forehand then asked Detiveaux if he would remain calm so that the handcuffs could be removed. (*Id.*) Detiveaux again replied, "It's up to you. I've done nothing wrong. Do what you got to do." (*Id.*) Forehand then left the room without removing the handcuffs. (*Id.*) Soon afterwards, two other guards opened the door to the interview room and asked Detiveaux if he would remain calm so that the handcuffs could be removed. (*Id.*) Detiveaux replied, "It's up to you . . . . Do what you have to do." (*Id.*) He and one of the guards then began to argue. (*Id.*) He also called the guards expletives. (*Id.*)

At 12:04 a.m., Detiveaux told Pinel that his back and arm were hurting. (*Id.*) At 12:07 a.m., Pinel helped Detiveaux call a Hard Rock employee that was serving

as Detiveaux's host for the evening.[3]  (*Id.*)  Detiveaux told the host that he had been

arrested and no one had told him anything.  (*Id.*)  He said that he was in handcuffs

and in a bind.  (*Id.*)  He requested the host's assistance.  (*Id.*)

    At 12:36 a.m., Pinel knocked on the door, but the guards refused to open it.

(*Id.*)  He asked the guards through the door to remove the handcuffs.  (*Id.*)  A guard

responded that Gaming officials were on-site investigating and would be with them

in a few minutes.  (*Id.*)  The guard refused to remove the handcuffs.  (*Id.*)  At 12:41

a.m. and 12:56 a.m., Pinel helped Detiveaux call 911.  (*Id.*)  On both occasions,

Detiveaux stated that he was being held against his will, that he was in handcuffs

and in pain.  (*Id.*)  In the first call, Detiveaux stated that he could not feel his

hands, and in the second call, he stated that the numbness was moving up to his

elbows.  (*Id.*)  He also told the operator that he was sixty-one years old, and he

needed help.  (*Id.*)  During the second call, Detiveaux denied refusing to allow the

guards to remove the handcuffs.  (*Id.*)

    At 12:58 a.m., Pinel once again asked the guards to remove the handcuffs.

(*Id.*)  He told the guards that Detiveaux was in pain.  (*Id.*)  They again refused.

(*Id.*)  A police officer entered the interview room at 1:03 a.m. and took Detiveaux

and Jeremy's cell phones.  (*Id.*)  He told them they were both going to jail for 911

---

    [3] According to the Complaint, Detiveaux was "a member of the Hard Rock
Casino Players Club and was awarded a Double Platinum Hall of Fame Encore
Players Pass, which is the highest level of the Players Club."  (Compl. at 2, ECF No.
1).  Therefore, Detiveaux was assigned a host, and he received free hotel rooms,
dinners, and entertainment at the casino.  (*Id.*)

abuse. (*Id.*)

At 1:49 a.m., two agents from the Gaming Commission entered the room along with a Hard Rock security guard. (*Id.*) Detiveaux asked them to remove the handcuffs, but they refused. (*Id.*) The Gaming agents told Detiveaux that they were investigating him for cheating and turning the matter over to the district attorney. (*Id.*) The Gaming agents told the security guard that it was his choice whether to remove the handcuffs. (*Id.*) After they finished speaking with him, Detiveaux was taken out of the room and into an adjoining hallway. (*Id.*) The handcuffs were removed at 2:00 a.m. (*Id.* at Disc 2, Monitor 08). At 2:15 a.m., a guard returned Detiveaux and Pinel's chips and phones. (*Id.* at Disc 3). He prohibited them from returning to the Hard Rock Casino and permitted them to leave. (*Id.*)

It is undisputed that no charges were ever filed against Detiveaux or Pinel. Detiveaux sought to recover his alleged winnings from the poker game at issue, but the Gaming Commission denied his request. (Pl.'s Resp. Ex. D, ECF No. 81-15). Detiveaux filed this lawsuit against Premier, attempting to assert the following claims: negligence, negligent hiring, negligent training and supervision, assault and battery, false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and gross negligence. (Compl. at 6-9, ECF No. 1). Detiveaux claims that the handcuffs caused him to suffer a pinched ulna nerve that required surgery and resulted in numbness and weakness in his left

(dominant) hand.  (*Id.* at 6).  He seeks compensatory and punitive damages.  (*Id.* at 9).

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## I.  IMMUNITY PURSUANT TO THE MISSISSIPPI GAMING CONTROL ACT

Miss. Code Ann. § 75-76-313 provides:

> If any person shall commit or attempt to commit a violation of any provision of Sections 75-76-301 through 75-76-313, any officer, employee or agent of a licensee or any law enforcement officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person in a reasonable manner for the purpose of ascertaining whether or not such person should be charged with a violation of Sections 75-76-301 through 75-76-313.  The questioning of a person by an officer, employee or agent of a licensee or by a law enforcement officer shall not render the licensee, its officer, its employee or its agent, or a law enforcement officer, civilly liable for slander, false arrest, false imprisonment, malicious prosecution,

> unlawful detention or otherwise in any case where the licensee's officer, employee or agent, or the law enforcement officer is acting in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit a violation of 75-76-301 through 75-76-313.

Miss. Code Ann. § 75-76-313.[4]  Since there are no cases that have interpreted this statute, both parties agree that cases interpreting the statute that enacted the Shopkeeper's privilege are instructive here.  *See* Miss. Code Ann. § 97-23-95.  Both statutes only provide immunity where the officer or employee is "acting in good faith and upon probable cause based upon reasonable grounds therefor" while detaining and questioning a patron.  Miss. Code Ann. § 75-76-313; Miss. Code Ann. § 97-23-95.

In *Turner v. Hudson Salvage, Inc.*, the Mississippi Supreme Court gave the following guidance for determining whether the Shopkeeper's Privilege applies:

> Two elements must be shown in order for a store owner to claim the qualified immunity afforded under § 97-23-95.  First, there must be proof of a good faith basis and probable cause based upon reasonable grounds to detain and question the customer.  Second, there must be proof that the detention and questioning of the customer was done in a reasonable manner.  To claim the privilege, both elements must be present.  The burden of proof rests upon the party asserting the privilege to show that probable cause existed to detain and question the suspected shoplifter.  Mere suspicion or conjecture does not meet the probable cause requirement.  Moreover the qualified privilege does not give a store owner or its employees the right to embarrass or harass a suspect in public view of others in a rude manner.

*Turner v. Hudson Salvage, Inc.*, 709 So. 2d 425, 428 (¶14-15) (Miss. 1998) (citations

---

[4]  Sections 75-76-301 through 75-76-313 of the Mississippi Gaming Control Act generally prohibit casino patrons from manipulating a game or cheating.

omitted).

Therefore, this Court must first determine whether there was a good faith basis and probable cause to detain and question Detiveaux.  None of the cases interpreting the Shopkeeper's Privilege have defined "probable cause" other than stating that "mere suspicion or conjecture" is insufficient.  *Id.* at 428 (¶15).[5] "Probable cause [to arrest] exists when the facts and circumstances within an officer's knowledge or of which he has reasonable trustworthy information, are sufficient in themselves to justify a man of average caution in belief that a crime has been committed and that a particular individual has committed it."  *Gales v. State*, 153 So. 3d 632, 641 (¶26) (Miss. 2014).  "In the context of a malicious prosecution claim, probable cause consists of a reasonable and honest belief in the guilt of the accused.  Also, probable cause is determined from the facts apparent to the observer when the prosecution is initiated."  *Hudson v. Palmer*, 977 So. 2d 369, 381 (¶33) (Miss. Ct. App. 2007) (citations omitted).  Detiveaux argues that the probable cause standard utilized in malicious prosecution cases is inapplicable here, but he does not identify a standard that he feels would be more appropriate.

The surveillance video of the incident provides probable cause to suspect that a violation of the Gaming Control Act had occurred under either probable cause standard.  The video reveals that one of Pinel's cards was dropped onto Detiveaux's

---

[5] These cases have also stated that the question of probable cause is a question for the court if the facts are undisputed but a question for the jury if the facts are disputed.  *See, e.g., Butler v. W.E. Walker*, 222 So. 2d 128, 130 (Miss. 1969).

cards, and then Detiveaux placed a wager on top of Jeremy's card.  Furthermore, it is undisputed that this incident occurred.  Although neither Detiveaux nor Pinel may have intended for this incident to have occurred, the video provided a sufficient basis for detaining and questioning them in accordance with the Gaming Control Act.

The Court next considers whether the detention and questioning of Detiveaux was done in a reasonable manner.  Detiveaux was left in a locked interview room for over two hours with his hands cuffed behind his back.  It is undisputed that the handcuffs were not double-locked and thus capable of tightening and causing injury.  No one from Premier's staff checked on Detiveaux or inspected the handcuffs during this period of time, even though Pinel told them Detiveaux was in pain.

Although Detiveaux's behavior caused him to be handcuffed in the first instance and also caused the guards to refuse to remove the handcuffs when he first entered the interview room, a jury could conclude that Premier's failure to regularly check on Detiveaux's condition throughout his extended detention was unreasonable. The summary judgment evidence demonstrates a genuine issue of material fact regarding whether Premier conducted the detention in a "reasonable manner."   As a result, Premier has not demonstrated that it is entitled to immunity.

## II.  DISMISSAL AS A SANCTION

The Fifth Circuit has held that a plaintiff's lawsuit can be dismissed as a

sanction for giving false testimony. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71,

77 (5th Cir. 2011). Premier argues that Detiveaux's lawsuit should be dismissed,

because it claims that Detiveaux made a misrepresentation during the following

exchange at his deposition:

> Q. Okay. And then what happens after that?
> A. They approached me; and I threw my hand up; I said don't touch
> me (indicating with hand up); and then they grabbed me; and put my
> arms behind my back; and picked me up off the floor; and drug me
> through the casino.
> . . . .
> Q. Is it your recollection that, before you put up your hands, did you
> initiate any contact with any employee at the Hard Rock?
> A. No, sir.
> Q. At any point, did you reach out and try to make contact with any
> employee of the Hard Rock?
> A. No, sir.
> Q. Was there a person moving towards you when you put your hands
> up?
> A. The security guard.
> Q. Was he in the process of moving a stool?
> A. I didn't see that.
> Q. Okay. Have you seen the video that shows that?
> A. I didn't notice it.
> Q. Have you seen the video?
> A. I have.
> Q. Okay. You didn't see anything in there to lead you to the
> conclusion that he was moving a stool out of the way?
> A. I don't recall.
> Q. Okay. And you didn't see, at any point, that you initiated contact,
> as opposed to an employee?
> A. I did not.
> Q. And you deny that –
> A. I do.
> Q. – that that occurred? Okay.

(Def.'s Mot., Ex. A at 107-08, ECF No. 67). Premier claims that the surveillance

video contradicts Detiveaux's testimony that he did not initiate "physical contact"

-11-

with the security guard.  During the deposition, however, counsel for Premier never specifically asked Detiveaux whether he initiated "physical contact;" he merely asked whether Detiveaux initiated contact with the guards.  Detiveaux correctly testified that the guards first approached him; thus, he may have been referencing that fact when he testified that he did not initiate the contact.

Furthermore, "dismissal with prejudice is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Brown*, 664 F.3d at 77 (internal quotation marks omitted).  The Fifth Circuit "will affirm a dismissal with prejudice only if: (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) lesser sanctions would not serve the best interests of justice." *Id.*  The district court must "use the least onerous sanction which will address the offensive conduct." *Id.*  For example, the court may consider limiting the dismissal to claims that are impacted by the false testimony.  *See id.*

In the present case, assuming for the sake of argument only that Detiveaux gave false testimony, that testimony is only relevant to his assault and battery claim; thus, it would be imprudent for the Court to dismiss the entire lawsuit on this basis.  In addition, Detiveaux's deposition testimony will be subject impeachment during cross examination.  The assault and battery claim must be dismissed on other grounds for the reasons explained below.  As a result, it is not necessary for the Court to further address Premier's request for dismissal as a sanction.

## III.  GENERAL NEGLIGENCE

"Negligence is a failure to do what the reasonable person would do under the same or similar circumstances." *Estate of St. Martin v. Hixson*, 145 So. 3d 1124, 1128 (¶9) (Miss. 2014).  "To state a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty, that the defendant breached its duty, and that the breach caused an injury to the plaintiff." *Id.*

In part, Detiveaux relies on premises liability cases in support of his negligence claim.  However, a claim that a premises owner's employee injured the plaintiff is not a premises liability case but a general negligence claim.  *See Reed v. D&D Drilling Expl., Inc.*, 27 So. 3d 414, 416 (¶6) (Miss. Ct. App. 2009).  To survive summary judgment on such a claim, there must be evidence that an employee of the defendant acting in the course and scope of his employment injured the plaintiff. *Id.*  Detiveaux has produced sufficient evidence to survive summary judgment on his general negligence claim.

## IV.  NEGLIGENT HIRING, TRAINING, AND SUPERVISION

Detiveaux also alleges that Premier was negligent in hiring its security guards.  "[A]n employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence of unfitness." *Parmenter v. J&B Enters., Inc.*, 99 So. 3d 207, 217 (¶ 18) (Miss. Ct. App. 2012).  Thus, the employer must have had either actual or constructive notice that the employee was

incompetent or unfit to be held liable for negligent hiring or retention. *Id.* Since Detiveaux has not produced any evidence that Premier had actual or constructive knowledge that any of its security guards were unfit, Premier is entitled to summary judgment as to Detiveaux's negligent hiring claim.

## V. NEGLIGENT TRAINING AND SUPERVISION

"A claim of negligent training or supervision is simply a negligence claim, requiring a showing of duty, breach, causation, and damages." *Cameron v. Werner Enters., Inc.*, No. 2:13cv243-KS-JCG, 2015 WL 4393068, at *2 (S.D. Miss. July 15, 2015) (citing *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1229 (¶45) (Miss. 2005)). Premier argues that it is entitled to summary judgment as to Detiveaux's negligent training and supervision claims pursuant to *Holmes v. Campbell Properties*, 47 So. 3d 721, 729 (Miss. Ct. App. 2010). In *Holmes*, the court held that "specific evidence of an employer's actual or constructive knowledge of its employee's dangerous or violent tendencies is necessary in order to create a genuine issue of material fact on an improper training or supervision theory of liability." *Holmes*, 47 So. 3d at 729. However, the *Holmes* decision is distinguishable from the present lawsuit. In *Holmes*, a customer of the defendant's car wash was killed by an employee of the car wash in a sudden attack. *Id.* The plaintiff had argued that the violent attack by the car wash employee was in and of itself evidence that the employer's training and supervision of the employee was negligent, but the court rejected that argument. *Id.* Furthermore, in *Gamble ex rel. Gamble v. Dollar*

*General Corp.*, the Mississippi Supreme Court held that it was not error to submit a negligent training claim to the jury even though there was no mention of prior violent acts committed by the Dollar General employee. *Gamble ex rel. Gamble v. Dollar General Corp.*, 852 So. 2d 5, 14 (¶29-32) (Miss. 2003).

In the present case, Detiveaux does not claim that he was injured by a violent attack by a Premier employee; thus, there is no need for Detiveaux to demonstrate prior acts of violence on the part of an employee. Detiveaux claims he was injured by being placed in handcuffs that were not properly locked for over two hours.

Premier's security guards gave differing testimony over whether handcuffs should be double-locked. For example, Sam Forehand, the guard who handcuffed Detiveaux, testified that he was trained to always double-lock handcuffs. (Def.'s Mot., Ex. G at 58, ECF No. 67-6) However, Michael Nangle, Premier's Assistant Security Shift Manager at the time of the incident, testified that he does not think Premier has a policy regarding double-locking handcuffs. (Pl.'s Resp., Ex. F at 27, ECF No. 91-17) Nangle gave the handcuffs to Forehand and instructed him to handcuff Detiveaux, but he failed to give the key to Forehand so that he could double-lock the handcuffs. (Def.'s Mot., Ex. F at 23, ECF No. 67-5); (Def.'s Mot., Ex. G at 58, ECF No. 67-6) Another guard, Dewayne Pirtle, testified that Premier never trained him how to handcuff a person. (Pl.'s Resp., Ex. H at 6, ECF No. 81-19) Pirtle also testified that double-locking is not required. (*Id.* at 9) Pirtle assisted Forehand in handcuffing Detiveaux. (*Id.* at 35) Another guard, Collin Walters, testified that handcuffs should always be double-locked. (Pl.'s Resp., Ex. I

at 18, ECF No. 81-20).

The testimony of these guards indicates that Premier's training and supervision of its guards in the proper use of handcuffs was either lacking or at best, minimal. It is for the finder of fact to weigh the evidence and make credibility determinations, thus a genuine issue of material fact exists regarding whether Premier negligently trained or supervised its employees. Premier's Motion for Summary Judgment is denied in this respect.

## VI. ASSAULT AND BATTERY

The Mississippi Court of Appeals has held:

> An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension. A battery goes one step beyond an assault in that harmful contact actually occurs.

*Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 76 (¶38) (Miss. Ct. App. 2005). Self defense is a defense to an assault and battery claim. *Whitten v. Cox*, 799 So. 2d 1, 8 (¶7) (Miss. 2000). A person may use "reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him." *Id.*

In support of his assault and battery claim, Detiveaux alleges, "Hard Rock without proper grounds, willfully and wrongfully handcuffed and detained Detiveaux for an extended period of time without just cause." (Compl. at 7, ECF No. 1). This Court has already found that Premier had probable cause to detain

-16-

Detiveaux. Furthermore, Premier had grounds to physically restrain and handcuff Detiveaux, because Detiveaux struck and pushed one of the guards and he resisted the guards' attempts to escort him to an interview room. While Detiveaux argues that Forehand's action in reaching for a stool located near Detiveaux constituted an assault, Forehand's demeanor in the surveillance video demonstrates otherwise. Forehand gradually made his way toward Detiveaux, who was standing in a corner behind Beverly Detiveaux and multiple stools. As Forehand made his way towards Detiveaux, Forehand repeatedly used his hand, palm facing up, to urge Detiveaux to come with him in a non-threatening manner. There is no evidence or indication that the guards intended to harm or scare Detiveaux. As a result, Premier is entitled to summary judgment as to Detiveaux's assault and battery claim.

## VII. FALSE ARREST

"False arrest is an intentional tort, arising when one causes another to be arrested falsely, unlawfully, maliciously and without probable cause." *Mayweather v. Isle of Capri Casino, Inc.*, 996 So. 2d 136, 141 (¶17) (Miss. Ct. App. 2008). If a plaintiff's arrest is supported by probable cause, then the plaintiff's claim for false arrest must be dismissed. *Id.* This Court has already found that there was probable cause to detain Detiveaux. The Court further finds that Detiveaux's threatening and abusive language as well as his actions in both striking and pushing Forehand gave the guards probable cause to arrest Detiveaux for disturbing the peace. *See* Miss. Code Ann. § 99-3-7 ("An officer or private person may arrest any person without a warrant for . . . a breach of the peace threatened or

attempted in his presence . . . .").  Therefore, Premier is entitled to summary

judgment as to Detiveaux's false arrest claim.

## VIII.  FALSE IMPRISONMENT

In order to state a false imprisonment claim, a plaintiff must demonstrate

that he was subjected to a detention that was unlawful.  *Morgan v. Greenwaldt*, 786

So. 2d 1037, 1043 (¶11) (Miss. 2001).  The question of whether a detention is

unlawful "turns on whether, looking at the totality of the circumstances, the actions

of the defendant were objectively reasonable in their nature, purpose, extent and

duration."  *Mayweather*, 996 So. 2d at 140 (¶14).  The pertinent inquiry is the

"reasonableness of the defendant's actions, not the intent."  *Scott v. Spencer Gifts,

LLC*, No. 1:14cv37-SA-DAS, 2015 WL 4205242, at *7 (N.D. Miss. July 10, 2015)

(quoting *Wallace v. Thornton*, 672 So. 2d 724, 727 (Miss. 1996)).

It is undisputed that Detiveaux was detained by Premier.  However, as

explained previously, a genuine issue of material fact exists regarding whether

Premier's detention of Detiveaux was reasonable, because he was handcuffed for

over two hours in a manner that allegedly caused him injury.  Therefore, Premier is

not entitled to summary judgment as to Detiveaux's false imprisonment claim.

## IX.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Mississippi Court of Appeals has provided the guidance for determining

whether a plaintiff can recover on an intentional infliction of emotional distress

claim:

In order to prevail on a claim for intentional infliction of emotional

-18-

distress, the severity of the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi.  Actions that have been found to evoke the requisite outrage have been a plot by a girlfriend and her parents to hide the child of an unwed father, arranging for the child to be adopted by strangers while the father pursued a custody suit.  Another example of sufficient outrageous conduct is a car dealership forging a customer's name on a sales contract and selling the contract to a finance company, resulting in the customer's credit being damaged.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.

*Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64-65 (¶41) (Miss. Ct. App. 2011).  The facts in the present lawsuit do not rise to the level required to demonstrate intentional infliction of emotional distress under Mississippi law.

## X.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Premier argues that Detiveaux's negligent infliction of emotional distress claim should be dismissed on the same basis as Detiveaux's general negligence claim.  This Court has previously held that Premier is not entitled to summary judgment as to Detiveaux's general negligence claim; therefore, Premier is not entitled to summary judgment as to Detiveaux's negligent infliction of emotional distress claim.

## XI.  GROSS NEGLIGENCE / PUNITIVE DAMAGES

The Mississippi Court of Appeals has explained, "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Ill. Cent. R. Co. v. Young*, 120 So.

3d 992, 1013-14 (¶62) (Miss. Ct. App. 2012) (quoting *Warren v. Derivaux*, 996 So. 2d 729, 738 (¶27) (Miss. 2008)).  Pursuant to statute, punitive damages can only be awarded when the plaintiff proves "by clear and convincing evidence that the defendant . . . acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." *Id.*; *see also* Miss. Code Ann. § 11-1-65(1)(a).  "[G]ross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them."  *In re Guardianship of Duckett*, 991 So. 2d 1165, 1177 (¶25) (Miss. 2008).

Premier argues that it is entitled to summary judgment as to Detiveaux's gross negligence claim and demand for punitive damages, because it was justified in detaining Detiveaux and placing him in handcuffs.  As explained previously, the crux of this lawsuit is the fact that, for over two hours, Detiveaux was left in handcuffs that were allegedly improperly secured without any employee of Premier checking on him or inspecting the handcuffs.  Premier has not argued or demonstrated that this conduct was not gross negligence evidencing a reckless disregard for Detiveaux's safety.  As a result, Premier has not demonstrated that it is entitled to summary judgment as to Detiveaux's gross negligence claim and demand for punitive damages.

## CONCLUSION

For the foregoing reasons, Premier is entitled to summary judgment as to Detiveaux's claims of negligent hiring, assault and battery, false arrest, and

intentional infliction of emotional distress.  Detiveaux's negligence, negligent training and supervision, false imprisonment, negligent infliction of emotional distress, and gross negligence claims remain pending.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [58] filed by Premier Entertainment Biloxi LLC is **GRANTED** as to Doyle Detiveaux's claims of negligent hiring, assault and battery, false arrest, and intentional infliction of emotional distress and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 9th day of October, 2015.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE